**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORTH CAROLINA FISHERIES ASS'N, INC., et al., <br><br>        Plaintiffs, <br><br>        v. <br><br> THE HONORABLE CARLOS GUTIERREZ, in his official capacity as the Secretary of Commerce, <br><br>        Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 06-cv-01815-JDB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>**DEFENDANT'S REPLY IN SUPPORT OF ITS COMBINED**
**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY**
**JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

Defendant Carlos Gutierrez, in his official capacity as the Secretary of Commerce (hereinafter referred to as the National Marine Fisheries Service ("NMFS")), submits the following Reply in Support of its Combined Opposition to Plaintiffs' Motion for Summary Judgment and Cross-motion for Summary Judgment.  As set forth herein, the material facts are not in dispute and NMFS is entitled to judgment as a matter of law.  Accordingly, the Court should deny Plaintiffs' Motion for Summary Judgment and enter judgment in favor of NMFS.

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    Plaintiffs Have Failed to Establish Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.    Amendment 13C Reflects a Rational Approach to Accomplish the Magnuson
             Act's Mandate to End Overfishing While Providing for the Needs of Fishing
             Communities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

             1.    NMFS Is Entitled to Judgment on Plaintiffs' Count III . . . . . . . . . . . . . . 7

             2.    NMFS Is Entitled to Judgment on Plaintiffs' Count I . . . . . . . . . . . . . . . 14

             3.    NMFS Is Entitled to Judgment on Plaintiffs' Counts II and IV  . . . . . . . 18

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                              <u>PAGE</u>

<u>A.M.L. Int'l v. Daley</u>, 107 F. Supp. 2d 90, 100-01 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . 12

<u>Alabama-Tombigbee Rivers Coal. v. Kempthorne</u>, 477 F.3d 1250 (11th Cir. 2007) . . . . . . . . 10

<u>Alliance Against IFQs v. Brown</u>, 84 F.3d 343, 345 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>Brower v. Daley</u>, 93 F. Supp. 2d 1071, 1082-83 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . 15, 17

<u>Ctr. for Law and Educ. v. Dep't of Educ.</u>, 396 F.3d 1152, 1157 (D.C. Cir. 2005) . . . . . . . . . . . 2

<u>Legacy Fishing Co. v. Gutierrez</u>,  WL 861143, *2 (D.D.C. March 20, 2007)  . . . . . . . . 4, 8, 9, 19

<u>Natural Res. Def. Council v. Daley</u>, 209 F.3d 747, 749 (D.C. Cir. 2000) . . . . . . . . . . 3, 12, 18, 19

<u>Nat'l Fisheries Inst. v. Mosbacher</u>, 732 F. Supp. 210, 227 (D.D.C. 1990) . . . . . . . . . . . . . . . . . 5

<u>Oceana, Inc. v. Evans</u>, 384 F. Supp. 2d 203 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Oceana, Inc. v. Evans</u>, No. Civ.A.04-0811(ESH), 2005 WL 555416 (D.D.C. Mar. 9, 2005) . . 11

<u>Oregon Trollers Ass'n v. Gutierrez</u>, 452 F.3d 1104 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . 17, 19

<u>Sierra Club v. EPA</u>, 292 F.3d 895 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>STATUTES</u>

16 U.S.C. § 1533(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16 U.S.C. § 1533(b)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16 U.S.C. § 1851(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 18

16 U.S.C. § 1851(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

16 U.S.C. § 1852(h)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

16 U.S.C.A. § 1853(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

## I.  INTRODUCTION

In its opening brief (hereinafter "NMFS' Mem."), NMFS demonstrated that there is a fatal disconnect between Plaintiffs' alleged cause of action, injury, and relief requested in this case.  NMFS' Mem. at 27-30.  Plaintiffs allege a violation of the Magnuson Act because of what Amendment 13C does not include (a rebuilding plan), yet Plaintiffs' alleged economic injury stems not from what Amendment 13C does not include, but from what it does include (conservation and management measures to end overfishing).  Rather than simply seeking an order directing NMFS to implement a rebuilding plan, Plaintiffs ask the Court to nullify Amendment 13C, which would do nothing to hasten the implementation of a rebuilding plan and would simply allow overfishing to continue in violation of the Magnuson Act.  This disconnect was evidenced by Plaintiffs' failure to demonstrate standing.  *See id* at 23-24.  Plaintiffs' opposition (hereinafter "Pls' Opp.") to NMFS' opening brief all but concedes this disconnect, suggesting that as a "remedy" for the Council's and NMFS' delay in implementing rebuilding plans, the Court order that overfishing be allowed to continue while these four Plaintiffs and NMFS undergo Court-ordered mediation to search for an appropriate remedy.  Pls' Opp. at 29-30.  While as a matter of policy Plaintiffs may dislike the conservation and management measures selected by the Council and implemented by NMFS in Amendment 13C, in the clear absence of any legal deficiencies, this Court should not substitute mediation for the Council process created by Congress in the Magnuson Act.

Plaintiffs' opposition fails to demonstrate that NMFS acted arbitrarily or capriciously in implementing Amendment 13C.  Rather, Plaintiffs only further distort the administrative record in a failed attempt to show "procedural irregularities" so that they may gain reversal of the Council's and NMFS' efforts to end overfishing.  As explained in NMFS' opening brief and

1

below, Amendment 13C is a rational and statutorily-mandated means to end overfishing while
minimizing to the extent possible the unavoidable short-term adverse economic impact on local
fishing communities.  Because Plaintiffs have not demonstrated that NMFS' implementation of
Amendment 13C was arbitrary or capricious, NMFS is entitled to judgment as a matter of law on
all counts in Plaintiffs' complaint.

## II.  ARGUMENT

### A.    Plaintiffs Have Failed to Establish Standing.

In its opening brief, NMFS explained that Plaintiffs had made no attempt to demonstrate
that they have standing by submitting affidavits or other supporting evidence.  NMFS' Mem. at
23-24.  Plaintiffs contend that this is a "patently unjustifiable argument."  Pls' Opp. at 4.
Plaintiffs assert – without citation – that affidavits are "unnecessary in an administrative case in
which directly regulated parties are challenging a rule."  *Id*.  While it is true that the D.C. Circuit
has held that evidence outside the administrative record is unnecessary where the plaintiff's
standing is "self-evident," where the plaintiff's standing is not self-evident based upon the
administrative record, a plaintiff "must supplement the record to the extent necessary to explain
and substantiate its entitlement to judicial review."  *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C.
Cir. 2002) (dismissing the plaintiffs' claims for failure to demonstrate standing).

As NMFS explained in its opening brief, Article III standing is a threshold jurisdictional
requirement, which requires that a plaintiff show, at a minimum, three elements: (1) injury-in-
fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61
(1992); *see also Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005)
(when the alleged injury is procedural in nature, "the courts relax – while not wholly eliminating
– the issues of imminence and redressability, but not the issues of injury in fact or causation");

NMFS' Mem. at 23-24.  In this case, NMFS does not dispute that Plaintiffs Oden and High are parties subject to regulation under Amendment 13C.  Assuming for the sake of argument that the administrative record shows that these Plaintiffs fish commercially for the species covered by Amendment 13C and may suffer economic injury from the reductions in allowable catch imposed by the amendment, it still is anything but "self-evident" how: (1) Plaintiffs' alleged economic injury-in-fact is fairly traceable to the legal violation they have alleged in this case (*i.e.* delay in implementing a rebuilding plan); (2) how their requested relief of rescinding Amendment 13C's measures to end overfishing would do anything to redress the lack of a rebuilding plan; or (3) how implementing a rebuilding plan would redress the economic injuries caused by reductions in allowable catch needed to end overfishing.  *See Lujan*, 504 U.S. at 560-61 (to establish standing, a plaintiff must not only show an injury-in-fact, but "there must be a causal connection between the injury and the conduct complained of . . .").

Plaintiffs' opposition fails to answer these questions.  To the contrary, Plaintiffs all but concede the existence of a fundamental disconnect in their case, suggesting that, as a "remedy" for NMFS' delay in implementing a rebuilding plan, the Court order that overfishing be allowed to continue while these four Plaintiffs and NMFS undergo Court-ordered mediation to search for an appropriate remedy.  Pls' Opp. at 29-30.  As an initial matter, allowing overfishing of overfished stocks to continue would not serve the Magnuson Act's mandate that NMFS end overfishing of overfished stocks.  *See* 16 U.S.C §§ 1851(a)(1), 1853(a)(1)(A), 1854(e)(3)-(4). Furthermore, allowing overfishing to continue as a "remedy" for the Council's and NMFS' delay in implementing a rebuilding plan is not only contrary to common sense but to the "basic goal of a management plan . . . [of] preventing overfishing and assuring optimum yield."  *Natural Res. Def. Council v. Daley*, 209 F.3d 747, 749 (D.C. Cir. 2000).  Such relief would defeat the entire

3

purpose of expediting action to end overfishing via Amendment 13C.  *See* 71 Fed. Reg. 55096, 55101 (Sept. 21, 2006), AR 5619 ("continued overfishing would ultimately threaten the long-term viability of these fisheries, resulting in increased levels of business failure and adverse community change").

NMFS explained in its opening brief that, as a practical matter, rather than redressing the economic injuries complained of by Plaintiffs, rescinding Amendment 13C would likely exacerbate those injuries because the longer action to end overfishing is delayed, the more depleted the stocks will become, thus requiring even more restrictive measures in the future to rebuild the stock.  NMFS' Mem. at 29-30.  Plaintiffs label this a "paternalistic argument" and assert in response that overfishing is proposed to be eliminated under Amendment 13C "by the start of the 2008 fishing year, or a full year-and-a-half sooner that the Reauthorization Act requires."  Pls' Opp. at 10 n.9.  That is simply not the case.  For snowy grouper and black sea bass, Amendment 13C specifies a three-year step-down of the allowable catch, which would end overfishing in 2009.  AR 4187, 4396, 4403, 4187, 4197, 4525, 4535.

To the extent Plaintiffs claim their injuries are redressable, the remedies that they seek are not proper under the Magnuson Act or the APA, and only further illustrate that their injury is not  the lack of a rebuilding plan.  Rather, Plaintiffs' attempt to use this lawsuit to force mediation is a transparent attempt to gain a second-chance at advancing the same policy arguments on behalf of an interest group of commercial fishermen previously presented to the Council.  As Plaintiffs note, each of the Plaintiffs was afforded the opportunity to participate in, and be heard during the Amendment 13C development process.  Pls' Opp. at 3.  Dissatisfied with the policy choices reached by the Council, Plaintiffs essentially ask this Court to substitute mediation for the Council process established by Congress in the Magnuson Act.  While as a

matter of policy Plaintiffs may dislike the management measures selected by the Council and implemented by NMFS, this Court of law is not the proper forum for such policy disputes. *See Nat'l Fisheries Inst. v. Mosbacher*, 732 F. Supp. 210, 227 (D.D.C. 1990) (finding no violation of the Magnuson Act where "[m]ost, if not all, of the arguments that the plaintiffs have mounted in this forum . . . were raised repeatedly by them (as well as other individuals and entities) throughout the lengthy administrative process that preceded the Secretary's approval and implementation of the FMP . . . . [and] [t]he Councils, and through them the Secretary, carefully considered but ultimately rejected these policy arguments").

As NMFS explained in its opening brief, Amendment 13C followed several public meetings held over the course of many months and during which the Council considered testimony and numerous public comments. NMFS' Mem. at 10-12. In addition to the four Plaintiffs in this case – all of whom are located in North Carolina – Amendment 13C governs fishermen in the States of South Carolina, Georgia, and Florida. *Id*. at 2. Ordering NMFS to undergo mediation with these four Plaintiffs to select measures to end overfishing and rebuild the snapper-grouper stocks would deprive the majority of the regulated entities of an opportunity to participate in the amendment process. As NMFS explained in its opening brief, Amendment 13C imposed measures that were best for the fishery as a whole, even though a small number of vessels may be disproportionately impacted. *See id*. at 34-36, 49-51. The Magnuson Act expressly authorizes the Council and NMFS to impose measures that "impose a hardship on one group if it is outweighed by the total benefits received by another group or groups." 50 C.F.R. § 600.325(c)(3)(i)(B); *see* NMFS' Mem. at 45.

Plaintiffs fail to acknowledge that the Council process continues while this litigation proceeds. As NMFS explained in its opening brief, NMFS and the Council currently are

working toward implementing rebuilding plans for the stocks addressed in Amendment 13C and expect to have a public hearing draft available by September of this year.  NMFS' Mem. at 26-27.  NMFS also explained that many of the measures advocated by Plaintiffs – which are unrelated to ending overfishing – will be addressed in Amendments 15 and 16.  NMFS' Mem. at 15 n.8 and at 28 n.15.  Plaintiffs will be allowed to participate in the Council's development of the new plan amendments, and their suggestions will be addressed.  Plaintiffs' attempt to force consideration of these issues through this litigation ahead of the Council process is premature and unnecessary.  *See* NMFS' Mem. at 29 n.16.

In sum, Plaintiffs have failed to meet their burden of demonstrating that they have personally suffered an injury-in-fact that is fairly traceable to the legal violation they have alleged in this lawsuit and that their injury is likely to be redressed by a favorable decision on the merits.  *See also* § II.B.1, *infra*.  Plaintiffs' complaint therefore should be dismissed in its entirety.  *Lujan*, 504 U.S. at 560-61; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

**B.    Amendment 13C Reflects a Rational Approach to Accomplish the Magnuson Act's Mandate to End Overfishing While Providing for the Needs of Fishing Communities.**

Even if the Court were to find that Plaintiffs had demonstrated standing and the Court were to reach the merits of their claims, the Court should enter summary judgment for NMFS on all counts of Plaintiffs' complaint.  As NMFS explained in its opening brief (at 21-23), Amendment 13C must be upheld so long as the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made."  *Alliance Against IFQs v. Brown*, 84 F.3d 343, 345 (9th Cir. 1996) (internal citations omitted).  A reviewing court

may not "substitute [its] judgment of what might be a better regulatory scheme, or overturn a

regulation because [it] disagree[s] with it, if the Secretary's reasons for adopting it were not

arbitrary and capricious." *Id*.  As the D.C. Circuit has explained, the Court is required to

determine only if NMFS has met "certain minimal standards of rationality."  *Ethyl Corp. v. EPA*,

541 F.2d 1, 36 (D.C. Cir. 1976) (en banc).

In this case, Amendment 13C easily clears the "minimal standards of rationality"

threshold.  The administrative record demonstrates that the Council and NMFS reviewed the best

scientific data[1] that were available and made reasonable and supported choices with those data.

Plaintiffs clearly dislike the choices that the Council and NMFS made as a matter of policy,

however neither Plaintiffs' opening brief nor its opposition have demonstrated that in deciding to

implement Amendment 13C, NMFS "entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise."  *Friends of the Earth, Inc. v. U.S. Army Corps of Eng'rs*, 109 F. Supp. 2d 30,

34 (D.D.C. 2000) (internal quotation marks and citation omitted).  NMFS therefore is entitled to

judgment as a matter of law on all counts.

1.    **NMFS Is Entitled to Judgment on Plaintiffs' Count III.**

Plaintiffs attempt to fault the Council and NMFS for expediting action to end overfishing

---

[1] As NMFS explained in its opening brief, the biological stock assessments were vetted through the Southeast Data, Assessment and Review ("SEDAR") workshops for scientific peer review and evaluation.  NMFS' Mem. at 11 n.6.  This process includes experts from NMFS, state agencies, and universities.  SEDAR complies with the Information Quality Act and the U.S. Department of Commerce Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, and Integrity of Disseminated Information, 67 Fed. Reg. 62685, 62691 (Oct. 8, 2002). *See* AR 678-686, 5388, 5453-5455a.

and not waiting until rebuilding plans had been completed. *See* Pls' Opp. at 4-12. Plaintiffs'

argument lacks merit. As NMFS explained in its opening brief, amidst the Council's work on

Amendment 13B – which was to include "the establishment of rebuilding timeframes" – new

stock assessments were announced that indicated black sea bass and snowy grouper were

overfished and were being subjected to overfishing. NMFS' Mem. at 11-12. Plaintiffs do not

dispute that these two stocks have been declared overfished and subject to overfishing. *See*

NMFS' Mem. at 25; Pls' Mem. at 12; Pls' Opp. at 7. Plaintiffs also do not dispute that for stocks

that are overfished, the Magnuson Act mandates that the Secretary end overfishing in the fishery

and rebuild the stocks in a time period that is "as short as possible." 16 U.S.C. §

1854(e)(4)(A)(i); *see also* 16 U.S.C. §§ 1851(a)(1), 1853(a)(1)(A); 1854(e)(3) (setting forth

Secretary's duty to prevent or end overfishing and rebuild overfished stocks); Pls' Mem. at 32;

Pls' Opp. at 7.

The only dispute is whether or not the Council's and NMFS' decision to expedite action

to end overfishing without waiting for rebuilding plans[2] to be completed clears the APA's

"minimal standards of rationality" threshold. *Ethyl Corp.*, 541 F.2d at 36. Despite Plaintiffs'

arguments, the Council's and NMFS's decision not to delay efforts to end overfishing was

entirely rational and consistent with the basic goal of the Magnuson Act, as was their decision to

defer consideration of measures unrelated to ending overfishing to future amendments. *See*

NMFS' Mem. at 10-16, 25-26. As stated above, NMFS is statutorily required to end overfishing

---

[2] NMFS explained in its opening brief that rebuilding plans previously have been implemented
for snowy grouper and black sea bass. NMFS' Mem. at 28 n.14; *see also* AR 328, 410.
Plaintiffs respond that these rebuilding plans are inadequate because they pre-date the
Sustainable Fisheries Act. Pls' Opp. at 6. Plaintiffs miss the point. The fact of the matter is that
past efforts to rebuild these stocks have been unsuccessful, making it necessary to end
overfishing as soon as possible.

of stocks that have been declared overfished. Indeed, "Congress' primary goal in passing the [Magnuson Act] was to address overfishing and mandate the sustainable conservation of threatened fish stocks." *Legacy Fishing Co. v. Gutierrez*, No. 06-0835 (JR), 2007 WL 861143, *2 (D.D.C. March 20, 2007); *see also* NMFS' Mem. at 2-3. As NMFS explained in the Federal Register notice announcing its implementation of Amendment 13C, "continued overfishing would ultimately threaten the long-term viability of these fisheries, resulting in increased levels of business failure and adverse community change." 71 Fed. Reg. at 55101, AR 5619.

Rebuilding plans are highly technical and require a considerable amount of time to complete. It is likely that adding rebuilding schedules to Amendment 13C would have delayed implementing the actions to end overfishing by at least one to two years. This then would have likely required even more stringent measures to end overfishing because overfishing had been allowed to continue during that time period. The draft of rebuilding schedules alternatives contained in Amendment13B were far from complete as they included rebuilding schedules for groupings of species, and the SSC stated that they did not agree with those groupings. AR 78-114, 3641. Stopping overfishing, albeit without a rebuilding schedule, allows rebuilding to begin. Given the anticipated length of time before rebuilding plans would be completed, the Council and NMFS decided to implement Amendment 13C to stop the stocks from becoming further depleted while this process continued. NMFS does not contend that it is exempt from the Magnuson Act's requirement to implement rebuilding plans for overfished stocks. Quite the opposite. As explained in NMFS' opening brief, now that management measures are in place to end overfishing, NMFS and the Council are working toward implementing rebuilding plans for the stocks addressed in Amendment 13C and expect to have a public hearing draft available by September of this year. NMFS' Mem. at 26-27. As explained in § II.A. *supra*, the majority of

the measures advocated by Plaintiffs will be addressed in connection with Amendments 15 and 16. As Plaintiffs readily admit, the measures they advocate have nothing to do with ending overfishing. Pls' Opp. at 24. Thus, the Council and NMFS reasonably deferred their consideration to future amendments.[3]

Plaintiffs' attempt to overturn the Council's and NMFS' efforts to end overfishing due to the lack of a simultaneous rebuilding plan defies the primary purpose of the Magnuson Act and is not supported by the available case law.[4] *See* NMFS' Mem. at 30-31. Indeed, NMFS explained in its opening brief (at 28-29) that Plaintiffs' theory of this case runs directly contrary to the Eleventh Circuit's decision in *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250 (11th Cir. 2007). In that case, as in this case, the plaintiffs sought to invalidate an agency rule promulgated pursuant to one statutory provision due to the agency's failure to concurrently comply with a second statutory requirement. Specifically, the U.S. Fish and Wildlife Service ("Service") decided to list the Alabama sturgeon as endangered under the Endangered Species Act ("ESA") but failed to concurrently designate the sturgeon's critical habitat as required by the ESA. *See* 16 U.S.C. § 1533(a)(3)(A). The Eleventh Circuit rejected the plaintiffs' attempt to invalidate the listing rule due to the Service's failure to designate critical habitat, finding that "[r]emoving one protection is not a fit remedy for the lack of another." 477 F.3d at 1271. The Eleventh Circuit affirmed the district court's decision ordering the Service to complete the

---

[3] For instance, Plaintiffs repeat their complaint from their opening brief that Amendment 13C did not address issues such as banning "the sale of recreationally caught fish." Pls' Mem. at 16; Pls' Opp. at 6. As NMFS has explained, this issue has nothing to do with ending overfishing, and thus was properly deferred to future rule making. NMFS' Mem. at 29 n.16.

[4] Moreover, as explained in § II.A, *supra*, Plaintiffs' requested remedy of vacating Amendment 13C does not even follow from either the statutory violation alleged or from Plaintiffs' alleged economic injury.

habitat designation within two years of the conclusion of the litigation. *Id*. As in *Alabama-Tombigbee Rivers Coal.*, in this case rescinding Amendment 13C would defeat the goal of the Magnuson Act, which is to prevent overfishing and ensure sustainable conservation of fish stocks, and thus is not a fit remedy for the delay in preparing rebuilding plans.

In their opposition, Plaintiffs attempt to distinguish *Alabama-Tombigbee Rivers Coal.* on the grounds that "[t]he ESA goes one way, towards protection of threatened and endangered species, not allowing for consideration of economic impacts." Pls' Opp. at 29. To the extent that the "consideration of economic impacts" even would provide a basis for distinguishing the rationale of *Alabama-Tombigbee Rivers Coal.*, Plaintiffs' assertion is incorrect. The ESA expressly provides for the consideration of economic and other impacts when designating critical habitat. *See* 16 U.S.C. § 1533(b)(2) ("The Secretary shall designate critical habitat . . . on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat"). Thus, even assuming for the sake of argument that Plaintiffs have shown a violation of the Magnuson Act in this case for the Council's delay in preparing a rebuilding plan for black sea bass and snowy grouper, the appropriate remedy for such delay would be for the Court to issue an order directing NMFS to prepare a rebuilding plan, not to rescind Amendment 13C. Moreover, Plaintiffs ignore that the Magnuson Act's clear directive that economic considerations are not to trump conservation measures.

Despite Plaintiffs' arguments (Pls' Mem. at 32; Pls' Opp. at 11-12), Judge Huvelle's rulings in *Oceana I* and *Oceana II* do not support rescinding Amendment 13C. *See* NMFS' Mem. at 31 (discussing *Oceana, Inc. v. Evans*, No. Civ.A.04-0811(ESH), 2005 WL 555416, *8 (D.D.C. March 9, 2005) ("*Oceana I*"), and *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203 (D.D.C.

11

2005) ("*Oceana II*")).  To the contrary, Judge Huvelle implicitly recognized NMFS' ability to satisfy the requirements of § 1853(a) through separate amendments.  In fact, NMFS explained that at least one court has held that the Secretary's partial approval of a FMP without a rebuilding target or rebuilding period was reasonable and did not violate Magnuson Act.  NMFS' Mem. at 31 (citing *A.M.L. Int'l v. Daley*, 107 F. Supp. 2d 90, 100-01 (D. Mass. 2000)).

Plaintiffs' assertion that "Defendant has a duty [under National Standard Eight] to develop and consider management measures that "minimize the adverse economic impacts on (fishing) communities'" (Pls' Opp. at 9) misconstrues the basic goal of the Magnuson Act as well as the requirements of National Standard Eight.  National Standard Eight does not require that NMFS affirmatively "develop" management measures to minimize economic impacts. What National Standard Eight requires is that NMFS' conservation and management measures "take into account the importance of fishery resources to fishing communities . . . in order to (A) provide for the sustained participation of such communities, and (B) to the extent practicable, minimize adverse economic impacts on such communities."  16 U.S.C. § 1851(a)(8).  However, NMFS is required to take these considerations into account only to the extent that doing so would be "consistent with the conservation requirements of this [Act] (including the prevention of overfishing and rebuilding of overfished stocks)."  *Id.*  As the D.C. Circuit noted in *Natural Res. Def. Council*, 209 F.3d at 753, in considering alternative plans the agency has an affirmative duty to "give priority to conservation measures."  That is precisely what the Council and NMFS did in this case.  Given the stock assessments that indicated black sea bass and snowy grouper were overfished and were undergoing overfishing, the Council rationally expedited action to end

the overfishing, deferring consideration of issues like recreational fish sales[5] to Amendment 15.

NMFS' Mem. at 28 n.15.  Plaintiffs simply ignore the fact that the Magnuson Act favors

conservation and attempt to turn the statute on its head by placing economics above

conservation.  Plaintiffs' opposition accuses the Council of making "procedural missteps"

because in the course of developing Amendment 13C, it first considered using an interim

measure and a framework action before opting for a plan amendment.  Pls' Opp. at 4, 11.

Plaintiffs allege that "solely due to Defendant's unlawful actions, Plaintiffs have been harmed."

Pls' Opp. at 5.  To the extent that Plaintiffs contend these alleged "procedural missteps"

constitute a cognizable violation of the Magnuson Act, Plaintiffs' claim lacks merit.  While

Plaintiffs are correct that, during the development process the Council considered various

procedural vehicles before ultimately proceeding with a plan amendment (*see* NMFS' Mem. at

12-14), Plaintiffs offer no support for their assertion that these actions were "unlawful," nor do

Plaintiffs explain how the act of considering different procedural vehicles caused them to be

injured.  Contrary to Plaintiffs' argument, the Council lawfully chose to proceed via a plan

amendment and NMFS lawfully implemented that plan amendment.[6]  Further, the choice to

proceed to a plan amendment was done to accommodate a change in the fishing year for black

sea bass and provide greater economic benefit for black sea bass pot fishermen.  AR 2615-2618.

In sum, the Council and NMFS clearly had a rational basis for expediting action to end

overfishing.  Plaintiffs' claim that the Court must strike down Amendment 13C's overfishing

---

[5] As NMFS explained in its opening brief, Plaintiffs grossly exaggerate the potential for injury from recreational fish sales.  NMFS' Mem. at 46-47.

[6] NMFS complied with all applicable law required for Secretarial Review after the South Atlantic Counsel submitted Amendment 13C.  *See* AR 5369-5857.

regulations because the rebuilding plans are not complete is contrary to the logic and conservation requirements of the Magnuson Act. There is no support for Plaintiffs' novel theory that environmentally protective measures must be vacated because other measures have not been promulgated. The Court should enter judgment as a matter of law in favor of NMFS on Count III.

### 2.    NMFS Is Entitled to Judgment on Plaintiffs' Count I.

Count I asks the Court to strike down Amendment 13C because certain portions of the final amendment were not reviewed by the Council's Scientific and Statistical Committee ("SSC"). *See* Pls' Opp. at 12-21. As NMFS explained in its opening brief, Count I lacks any basis in fact or in law. NMFS' Mem. at 49-52. Plaintiffs' opposition fails to provide legal or factual support for Count I and merely further distorts the administrative record. NMFS therefore is entitled to judgment on Count I.

The Magnuson Act requires that plan amendments prepared by the councils be submitted to NMFS along with any proposed regulations the council "deems necessary or appropriate" to implement the plan amendment. *See* 16 U.S.C. §§ 1852(h)(1), 1853(c). National Standard Two requires that conservation and management measures be "based upon the best scientific information available." *Id.* at § 1851(a)(2). The process that resulted in Amendment 13C fully complied with these statutory requirements. On February 23, 2006, the Council Chairman, Dr. Louis B. Daniel III,[7] submitted Amendment 13C to Dr. Roy Crabtree, NMFS' Southeast Regional Administrator for Secretarial review. AR 4693, 5472. Dr. Daniel's letter transmitting the amendment stated: "On behalf of the Council, I would like to thank you and your staff for the

---

[7] Dr. Daniel sits on the Council as the representative from the North Carolina Division of Marine Fisheries.

close cooperation and hard work that went into preparing Amendment 13C." *Id.* NMFS'

Southeast Regional Science Center ("SEFSC") reviewed Amendment 13C and certified that it

was based on the best scientific information available, and accordingly NMFS implemented the

amendment on September 21, 2006. AR 5474; 71 Fed. Reg. 55096.

     Plaintiffs have not shown that the Council or NMFS deviated from the requirements of

the Magnuson Act. The fact that the SSC may not have reviewed the final version of

Amendment 13C does not render it defective as Plaintiffs suggest. The SSC is not the final

arbiter of whether or not a FMP is based on the best available scientific and statistical

information. *See* NMFS' Mem. at 51. Rather, the SSC is a body that advises the Council on

biological and statistical matters. *Id.* at 14. Plaintiffs ignore the fact that members of the SEFSC

who reviewed Amendment 13C are also members of the SSC and that there is "close

cooperation" between the Council staff and NMFS staff. *See, e.g.* AR 3404-3407, 6427, 6493,

6498, 4693. In any event, where there are "competing expert opinions, '[i]t is the prerogative of

[the agency] to weigh those opinions and make a policy judgment based on the scientific data.'"

*Brower v. Daley*, 93 F. Supp. 2d 1071, 1082-83 (N.D. Cal. 2000) (citation omitted).

     Plaintiffs and Amicus Curiae are wrong to assert that "Defendant's designees"

unilaterally[9] made changes to Amendment 13C. Pls' Mem. at 43; Pls' Opp. at 13, 16; Amicus

Mem. at 8. As NMFS explained in its opening brief, all changes to Amendment 13C after the

December 2005 Council meeting were done by Council staff, at the direction of the Council,

with assistance from NMFS staff, as evidenced by email exchanges between the staffs. *See* AR

---

[9] Plaintiffs contend that the Interdisciplinary Plan Team ("IPT") was not yet in existence at the time of the Snapper-Grouper Committee's September 2005 direction to its staff, however that is incorrect. The IPT was in existence in June 2005 as documented by IPT meetings. AR 31-33.

6629-6649.  Given the "close cooperation" that went into the preparation of Amendment 13C, it

also is inaccurate to assert, as Amicus does (Amicus Mem. at 16), that NMFS changed the SSC's

conclusions[9] or that the Council's Executive Director sent Amendment 13C to NMFS for

Secretarial review "without realizing that the Council's conclusions had been altered."  *See* AR

4693 (letter from Council Chairman Daniel transmitting Amendment 13C for Secretarial

review).  Indeed, the minutes from the December 2005 Council meeting demonstrate that the

Council was fully aware that changes to the amendment needed to be made.  *See* AR 4009-4011,

4076-4078.

      As NMFS has explained in detail in its opening brief, it was necessary to make changes

to  Amendment 13C after the SSC's October 2005 report because the Council approved a less

restrictive set of preferred alternatives at the December 2005 Council meeting than the SSC had

considered in October 2005.  AR 3232, 4711-4712; *see* NMFS' Mem. at 50-51.  Plaintiffs fail to

acknowledge that these less restrictive alternatives were selected to minimize the short-term

negative impacts to fishermen.  AR 3232, 4711-4712.  Moreover, Plaintiffs fail to acknowledge

that the SSC's October 2005 report expressed concern that the more restrictive alternatives –

which the Council did not select – *may not have been restrictive enough* to end overfishing due

to bycatch mortality occurring after the quotas had been achieved.  *See* AR 3636 (SSC's October

2005 report stating: "Many of the current preferred alternatives in 13C are designed to maximize

harvest while eliminating overfishing . . . . [g]iven that PQBM [post quota bycatch mortality]

exists and is not incorporated into the projections, any policy that maximizes fishing mortality

---

[9] Plaintiffs incorrectly assert that revisions to Amendment 13C included "altered science."  Pls'
Opp. at 15 n.13.  There was no "altered science," only changed preferred alternatives by the
Council in response to public comments and recommendations from the Snapper-Grouper
Advisory Panel.

cannot eliminate overfishing").  Thus, Plaintiffs' assertion that changes were made to Amendment 13C following the SSC's review to "hide" adverse economic impacts is unfounded. Pls' Opp. at 28.

Plaintiffs place great reliance on one change in particular, which they quote at length on page 17 of their opposition.  Plaintiffs take this change entirely out of context.  As NMFS explained in detail in its opening brief (at 50-51), before the preferred alternatives were changed at the December 2005 Council meeting, it would have been possible that, without a trip limit, the 84,000 lb quota could have been met sooner in 2006 because fishermen in Florida might begin catching snowy grouper sooner.  Under this scenario, there was a concern that there could have been a disproportionately negative affect on North Carolina fishermen.  However, since the Council decided to increase the quota for 2006 to 151,000 lb with a 100 lb trip limit, it was unlikely that Florida fishermen would catch the quota sooner than North Carolina fishermen.  It was anticipated that a 151,000 lb quota would be met in summer, when, historically, North Carolina and Florida had caught an equal amount of their average catch.  71 Fed. Reg. at 55097, AR 5615.  Therefore, "the IPT revised [Amendment 13C] to clarify the Council's Preferred Alternative 2 would not likely have a disproportionate negative effect on North Carolina fishermen during 2006."  *Id.*  Contrary to Plaintiffs' contention that "the record does not reflect why any specific alternations were made" (Pls' Opp. at 18), NMFS rationally explained the reasons for these alterations in detail in the Federal Register notice announcing its implementation of Amendment 13C.  *See* NMFS' Mem. at 50-51.

Contrary to Plaintiffs' suggestion, Count I is precisely like *Oregon Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1120 (9th Cir. 2006), where the Ninth Circuit held that "[b]ereft of any contrary science, plaintiffs' bare allegation that the agency's [management measure] conflicts

17

with the 'best scientific evidence available' fails." Plaintiffs have not identified any contrary

science that the Council or NMFS entirely failed to consider, nor have Plaintiffs shown that

NMFS offered an explanation for its actions that is "so implausible that it could not be ascribed

to a difference in view or the product of agency expertise." *Friends of the Earth, Inc.*, 109 F.

Supp. 2d at 34. Rather, Plaintiffs attempt to show "procedural irregularities" where there are

none. NMFS is entitled to judgment as a matter of law on Count I.

### 3.    NMFS Is Entitled to Judgment on Plaintiffs' Counts II and IV.

In its opening brief NMFS demonstrated that, despite Plaintiffs' attempted challenges

under National Standards Four, Eight, and the Regulatory Flexibility Act ("RFA"),[10] the Council

and NMFS fully complied with the requirements of the Magnuson Act and the RFA in

implementing Amendment 13C. *See* NMFS' Mem. at 32-49. At the most basic level, Plaintiffs

fail to acknowledge that the primary goal of the Magnuson Act is "to address overfishing and

mandate the sustainable conservation of threatened fish stocks." *Legacy Fishing Co.*, 2007 WL

at *2; *see* NMFS' Mem. at 2-3, 33-34; § II.B.1, *supra*. Nor do Plaintiffs acknowledge at any

point in either their opening brief or their opposition that NMFS has an affirmative duty to "give

priority to conservation measures." *Natural Res. Def. Council*, 209 F.3d at 753.

As NMFS has explained, in expediting action to end overfishing via Amendment 13C,

the Council and NMFS acted pursuant to the Magnuson Act's mandate to end overfishing and

---

[10] In their opening brief, Plaintiffs asserted: "Plaintiffs are foregoing their claims under National Standards 5 and 6." Pls' Mem. at 42 n.33. However, despite this representation, Plaintiffs' opposition argues that NMFS "has not demonstrated compliance with the National Standards Four, Five, Six, and Eight, or the Regulatory Flexibility Act." Pls' Opp. at 21. Relying on Plaintiffs' previous representation that they were foregoing their National Standard Five and Six claims, NMFS did not address them in its opening brief. Plaintiffs' attempt to resurrect these claims for the first time in their opposition/reply is unfair and prejudicial to NMFS and as such the Court should disallow any reliance by Plaintiffs upon National Standards Five and/or Six.

rebuild stocks declared to be overfished.[11]  *See* 16 U.S.C. §§ 1854(e)(4)(A)(i); *accord* National

Standard One: "Conservation and management measures shall prevent overfishing while

achieving, on a continuing basis, the optimum yield from each fishery for the United States

fishing industry."  16 U.S.C. § 1851(a)(1), *see also* 1853(a)(1)(A); NMFS' Mem. at 25-27.

National Standard Eight requires NMFS to take economic considerations into account "only

when two different plans achieve similar conservation measures," *Natural Res. Def. Council*,

209 F.3d at 753, and then NMFS is required to minimize adverse impacts only "to the extent

practicable," "consistent with the conservation requirements of this [Act] (including the

prevention of overfishing and rebuilding of overfished stocks)."  16 U.S.C. § 1851(a)(8).

Courts have held that, even if the economic impacts from conservation measures are

"potentially grave," NMFS does not violate National Standard Eight where the administrative

record "reflects that [economic] difficulties were recognized, analyzed, and considered by the

NMFS in striking the statutorily mandated balance."  *Legacy Fishing Co*., 2007 WL 861143 at

*8; *see also* NMFS' Mem. at 33.  As the Ninth Circuit noted in *Oregon Trollers Ass'n*, "'[a]bout

the best a court can do' when it reviews the NMFS's performance with respect to National

Standard No. 8 'is to ask whether the Secretary has examined the impact of, and alternatives to,

the plan he ultimately adopts.'"  452 F.3d at 1123 (9th Cir. 2006) (quoting *Little Bay Lobster Co.

v. Evans*, 352 F.3d 462, 470 (1st Cir. 2003)).  "[A]s with national standard 8, a rule of reason

applies [to the RFA] . . . . [t]he agency's obligation is simply to make a reasonable good faith

effort to address comments and alternatives."  *Little Bay Lobster Co.*, 352 F.3d at 471 (internal

---

[11] As NMFS explained in its opening brief, because golden tilefish and vermilion snapper have
not been declared overfished, NMFS is not required to prepare rebuilding plans for these species.
NMFS' Mem. at 28 n.15.

citation omitted).

That is precisely what occurred in this case.  NMFS explained at length in its opening brief (NMFS' Mem. at 34-42) how the Council recognized, analyzed, and considered the economic impacts of Amendment 13C on the regulated entities as well as how the Council and NMFS considered numerous alternatives to the management measures selected, including ways to minimize the economic impacts to the extent practicable.  Indeed, the Council selected new preferred alternatives at the December 2005 meeting to increase the allowable catch of black sea bass, snowy grouper, and vermillion snapper to minimize the economic impacts.  *See* § II.B.2, *supra*.  After considering all of the available information, the Council and NMFS made choices based on those data that were rational and supported by the administrative record.  That is all the Magnuson Act requires.

In their opposition, Plaintiffs mostly repeat arguments from their opening brief that NMFS deferred action on measures unrelated to ending overfishing and failed to minimize the economic impacts of ending overfishing to Plaintiffs' satisfaction.  *See* Pls' Opp. at 21-29. NMFS believes the positions and discussion of pertinent caselaw authority in its opening brief are accurate and more than adequately support its cross-motion for summary judgment.  NMFS therefore is content to rely on those positions without further elaboration.  NMFS will limit the remainder of its reply to mischaracterizations in Plaintiffs' opposition and Amicus' brief that merit rectification, particularly with respect to their failed attempts to show a violation of National Standard Four.

Plaintiffs and Amicus Curiae both attempt to paint dramatic portraits of the dire economic consequences of Amendment 13C.  The administrative record, however, paints an entirely different portrait.  For instance, Amicus asserts that the harvest restrictions in

Amendment 13C for snowy grouper, vermilion snapper, and black sea bass "disproportionately affect commercial fishermen and fishing-related industries and communities in North Carolina" to such a degree that they may "cripple the fishing communities which rely on those species." Amicus Mem. at 4. The administrative record, however, shows that from 1999 to 2003, snapper-grouper species comprised only 11% of the total revenue of all the finfish landings in North Carolina. AR 4835. That is compared to 59% in South Carolina, 95% in Georgia, and 36% in Florida. *Id*. The administrative record also shows that snapper-grouper species comprise only 4% of the total ex-vessel revenue (the gross value paid to fishermen for their fish) in North Carolina. *Id*. That is compared to 12% for South Carolina, 5% for Georgia and 14% for Florida. AR 4835. In other words, in North Carolina, 89% of the total revenue from all finfish landings and 96% of the total ex-vessel revenue comes from fish that are not even covered by the Snapper-Grouper FMP.

Like Amicus Curiae, Plaintiffs argue that "Amendment 13C has particularly disabled the full-time commercial fishermen who form the heart of healthy fishing communities," which is "manifested" through measures such as the 100-pound snowy grouper trip limit. Pls' Opp. at 22. The administrative record reveals Plaintiffs' assertion to be an exaggeration. From 1999 to 2003, the five species governed by Amendment 13C comprised only 6% of the total revenue from finfish landings in North Carolina, as compared to 29% in South Carolina, 53% in Georgia and 8% in Florida. AR 4838. Amendment 13C also shows that these five species comprised only 2% or the total revenue from all commercial landings in North Carolina, compared to 6% in South Carolina, 3% in Georgia, and 3% in Florida. *Id*. In other words, in North Carolina, 94% of the total revenue from finfish landings and 98% of the total revenue from commercial landings come from species other than snowy grouper, golden tilefish, vermilion snapper, black

sea bass and red porgy.  It is worth mentioning that Amendment 13C does not close any of these

fisheries and uses trip limits to help keep the fisheries open so that fishermen in various states

such as North Carolina can continue to harvest these species.  Thus, Plaintiffs exaggerate the

potential economic impacts from the reductions in allowable catch of snowy grouper.[12]

Plaintiffs assert – without factual support – that the 84,000 lb quota for snowy grouper

will be reached in exactly 840 trips because every trip will reach the 100 lb limit, thereby

favoring Florida fishermen over North Carolina fishermen because fishing starts earlier in the

year in Florida than in North Carolina.  Pls' Opp. at 18-19.  Contrary to Plaintiffs' argument, the

administrative record shows that, historically, of all trips landing at least one pound of snowy

grouper, well over half of them (59%) did not land 100 lbs.  AR 5308.  Thus, it is unreasonable

to assume that all fishermen will now suddenly be able to catch 100 lbs per trip.[13]  Moreover,

Plaintiffs' assertions (Pls' Opp. at 1, 25) that the average snowy grouper landed is 40 pounds are

not supported by the administrative record.  Amendment 13C states: "Snowy grouper attain sizes

as great as 48" total length and 66 lbs.  However, the average snowy grouper currently being

taken by commercial fishermen is about 21" total length and 5 lbs."  AR 4989.  Thus, Plaintiffs'

contention that under the 100 lb trip limit they will be limited to harvesting "two or even one"

---

[12] Although Plaintiffs assert that the species of "major concern" to them are snowy grouper and
black sea bass, the administrative record demonstrates that snowy grouper are targeted by a
small percentage of North Carolina fishermen for only part of the year.  AR 4899-4900.

[13] Plaintiffs argue that fishermen's "strategic responses to other measures in this amendment
could result in earlier closures for snowy grouper if harvesting strategies become more
aggressive in the snowy fishery in order to increase net trip revenue."  Pls' Opp. at 19 (citing AR
2946).  However, this only would be the case if there were no trip limit.  The text Plaintiffs refer
to describes what would happen in 2006 if regulations were implemented without a trip limit.  As
explained in NMFS' opening brief, a 100 lb trip limit was imposed to ensure a year-round
fishery.  NMFS' Mem. at 51.

snowy grouper per trip "for the next three decades hence" is unfounded.

Plaintiffs' opposition (at 23) argues that NMFS "overlooked" the fact that it was expected that 5% of entities (21 vessels) would collectively account for 62% of the total net loss in the commercial harvest sector from Amendment 13C's catch limits. Plaintiffs cannot seriously contend that NMFS "overlooked" this fact; it is included in the Federal Register notice announcing NMFS' decision to implement Amendment 13C and follows NMFS' express acknowledgement that the "short-term economic effects of the final rule are not expected to be distributed evenly across all affected entities." *See* 71 Fed. Reg. at 55103, AR 5621.

Plaintiffs contend that these economic impact figures demonstrate that full time snapper-grouper fishermen, "especially those in North Carolina's Outer Banks . . . are most severely impacted by the regulations." Pls' Opp. at 23.[14] The figures Plaintiffs refer to, however, do not refer exclusively to North Carolina vessels. Rather, those figures include all vessels in the South Atlantic fishery, such as the golden tilefish fishery in South Carolina and Florida, which are more greatly impacted than snowy grouper fishermen. AR 5621. In any event, Plaintiffs fail to acknowledge that the Magnuson Act's implementing regulations expressly authorize allocations that "impose a hardship on one group if it is outweighed by the total benefits received by another group or groups." 50 C.F.R. § 600.325(c)(3)(i)(B); NMFS' Mem. at 45. As NMFS' final regulatory flexibility analysis ("FRFA") indicated, the majority of potentially affected entities (54 percent, or 219 of 408 vessels) were not expected to incur any losses under the final rule. 71 Fed. Reg. at 55103, AR 5621. NMFS's decision to implement Amendment 13C was rational and

---

[14] Plaintiffs erroneously assert throughout their opposition that Amendment 13C imposes a "two-year step down." Pls' Opp. at 18, 23. Amendment 13C contains three-year, not two-year, step downs, to minimize the economic impacts to fishermen, even though they are not the environmentally preferable alternatives. *See* NMFS' Mem. at 16-21.

consistent with the requirements of National Standard Four in that it found that the costs to a small group of fishermen are outweighed by the benefits to the fishery as a whole.  NMFS is entitled to judgment as a matter of law on Counts II and IV.

### III.  CONCLUSION

For the reasons set forth above, NMFS is entitled to judgment as a matter of law on all counts of Plaintiffs' Complaint.  Plaintiffs' Motion for Summary Judgment should be denied.

Respectfully submitted this 25th of May, 2007.

MATTHEW J. MCKEOWN
Acting Assistant Attorney General

JEAN E. WILLIAMS
Chief, Wildlife & Marine Resources Section

s/ *Robert P. Williams*
ROBERT P. WILLIAMS, Trial Attorney
U.S. Department of Justice
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369
(202) 305-0210 (ph)
(202) 305-0275 (fx)
robert.p.williams@usdoj.gov

***Attorneys for Federal Defendant***

Of Counsel:

Monica A. Smit-Brunello
Department of Commerce, NOAA
Office of General Counsel
Southeast Regional Office
263 13th Avenue South, Suite #177
St. Petersburg, Florida   33701
(727) 824-5361
(727) 824-5376 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2007, the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will generate automatic service of such filing upon all parties registered to receive such notice, including the following:

David E. Frulla
Email: dfrulla@kelleydrye.com
Shaun M. Gehan
Kelley Drye & Warren LLP
3050 K Street, NW – Suite 400
Washington, DC 20007

*Counsel for Plaintiffs*

J. Allen Jernigan
Email: ajern@ncdoj.gov
North Carolina Department of Justice
Attorney General's Office
P.O. Box 629
Raleigh, NC 27602

*Counsel for Amicus Curiae*

s/ *Robert P. Williams*
ROBERT P. WILLIAMS, Trial Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORTH CAROLINA FISHERIES ASS'N, INC., et al., <br><br>        Plaintiffs, <br><br>        v. <br><br> THE HONORABLE CARLOS GUTIERREZ, in his official capacity as the Secretary of Commerce, <br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 06-cv-01815-JDB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>NOTICE REGARDING BULKY EXHIBIT ATTACHMENT</u>

The Joint Appendix containing copies of all record documents cited by the parties in their summary judgment memoranda in the above-captioned case is in CD-ROM form only and is being maintained in the case file in the Clerk's Office. These documents will be available for public viewing and copying between the hours of 9:00 a.m. to 4:00 p.m., Monday through Friday.

s/ *Robert P. Williams*
ROBERT P. WILLIAMS, Trial Attorney
U.S. Department of Justice
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369
(202) 305-0210 (ph)
(202) 305-0275 (fx)
robert.p.williams@usdoj.gov

***Attorneys for Federal Defendant***

Dated: May 25, 2007