## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NORTH CAROLINA FISHERIES ASSOCIATION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE HONORABLE CARLOS GUTIERREZ, in his official capacity as the Secretary of Commerce, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 06-cv-01815-JDB

## SUPPLEMENTAL MEMORANDUM OF LAW

As directed by the Court, Federal Defendants hereby submit their supplemental memorandum on whether, under 16 U.S.C. §§ 1853(a) and 1854(e), when the Secretary of Commerce and his designees promulgate a plan amendment designed to end the overfishing of species determined to be "overfished," are these agency officials required at that time to include in that same plan amendment measures designed to rebuild the overfished stocks.

An analysis of the statute under the <u>Chevron</u> framework leads to the conclusion that for plans or amendments promulgated under 16 U.S.C. §§ 1853(a) and 1854(e), the rebuilding measures should be included with the measures to remedy overfishing.

## I. STATUTORY INTERPRETATION UNDER
## CHEVRON V. NATURAL RESOURCES DEFENSE COUNCIL

Statutory interpretation under <u>Chevron</u> and its progeny entails a two-step analysis. First, the Court looks to whether Congress has expressed its clear intent in the statute. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress . . . . [However,] if the statute is silent

or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.  Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984).  Deference to the agency's interpretation is warranted only when "Congress has not directly addressed the price question at issue." National Association of Home Builders v. Defenders of Wildlife, – S.Ct.– , 2007 WL 1801745 (2007) at *12 (citing Chevron, 467 U.S. at 837).

"In making the threshold determination under Chevron, a reviewing court should not confine itself to examining a particular statutory provision in isolation.  Rather, the meaning – or ambiguity– of certain words or phrases may become evident only when placed in context . . . . It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.  National Association of Home Builders v. Defenders of Wildlife, – S.Ct.– , 2007 WL 1801745 (2007) (internal citations and quotations omitted).

"The court applies the traditional tools of statutory interpretation in determining congressional intent, looking to the text, structure, purpose, and legislative history of a statute." Maine Public Utilities Comm'n v. FERC, 454 F.3d 278, 282 (D.C. Cir. 2006) (citing Chevron, 467 U.S. at 842-43 & n. 9).  "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, 467 U.S. 843 n.9.  "Analysis of legislative history is, of course, a traditional tool of statutory construction.  There is no reason why [the court] must confine ourselves to, or begin our analysis with, the statutory text if other tools of statutory construction provide better evidence of congressional intent with respect to the precise point at issue." Zuni Public Schools District No. 89 v. Department of Education, 127 S.Ct. 1534, 1550 (2007).

## II.  ANALYSIS

Congress reauthorized the Magnuson-Stevens Act ("MSA") in 1996 and amended the statute in several key respects.  Of relevance here, Congress amended Section 303 of the Act to expand the scope of fishery management plans to require that each plan specify criteria to identify a fishery as overfished and that each plan contain measures to rebuild a fishery that is overfished or approaching an overfished condition.  S. Rep. 104-276,  104th Cong., 2d Sess. 1996, *reprinted in* 1996 U.S.C.C.A.N. 4073, 4090-4091.

As amended by the Sustainable Fisheries Act ("SFA")  of 1996, Section 303 of the Magnuson Act provides:

> **(a) Required provisions**
> Any fishery management plan which is prepared by any Council, or by the Secretary, with respect to any fishery, shall–
>> (1) contain the conservation and management measures, applicable to foreign fishing and fishing by vessels of the United States, which are –
>>> (A) necessary and appropriate for the conservation and management of the fishery, to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery.

16 U.S.C. §§ 1853(a).

Section 304(e) of the Magnuson Act provides:

> (3)  Within one year of an identification under paragraph (1) or notification under paragraphs (2) or (7), the appropriate Council (or the Secretary, for fisheries under section 1852(a)(3) of this title) shall prepare a fishery management plan, plan amendment, or proposed regulations for the fishery to which the identification or notice applies –
>> (A) to end overfishing in the fishery and to rebuild affected stocks of fish;

> ****

> (4) For a fishery that is overfished, any fishery management plan, amendment, or proposed regulations prepared pursuant to paragraph (3) or paragraph (5) for such fishery shall –
>> (A) specify a time period for ending overfishing and rebuilding the fishery . . . .

16 U.S.C. § 1854(e).

In each of these provisions, the mandate to end overfishing is linked by "and" with the mandate to rebuild stocks.   The statutory language does not strictly mandate that the Council or Secretary complete these simultaneously.  Instead, a plan, plan amendment, or regulations to address each mandate must be prepared within one year.

As with the statutory language, the legislative history does not directly address the timing of the measures.  The language of the relevant Senate report does indicate that Congress anticipated these actions would be addressed in a single plan or plan amendment.

> A Council (or the Secretary, where practicable, with respect to Atlantic HMS fisheries) would be required to prepare a plan, plan amendment or regulations within one year to end overfishing, rebuild affected stocks of fish, and prevent overfishing from occurring in fisheries approaching that condition. The plan, amendment or regulation would be required to specify a time period for ending overfishing and rebuilding the fishery that could not exceed 10 years, except where the biology or the stock of fish or environmental conditions prevent this maximum time frame from being met.
>
> This subsection of the reported bill also would amend the Magnuson Act to require the Secretary to prepare a fishery management plan or amendment to stop overfishing and rebuild affected stocks if a Council does not submit a plan, amendment or regulations within one year of being notified that a fishery is overfished. The Councils could request the Secretary to implement interim measures to reduce overfishing during the development of a plan, amendment or regulations.

S. Rep. 104-276, S. Rep. No. 276, *22, 104th Cong., 2d Sess. 1996, *reprinted in* 1996 U.S.C.C.A.N. 4073, 4095.

In the House report on the 1996 Amendments, the House spoke generally in terms of a single plan or single amendment that would address overfishing and rebuilding.

> If the Council takes no action in one year to effectively address the problem, the Secretary, within nine months, is required to prepare an amendment to the Fishery Management Plan, or prepare a Plan if none exists, under existing procedures in the Magnuson Act."

H.R. Rep. 104-171, H.R. Rep. No. 171, 104th Cong., 1st Sess. 1995, 1995 WL 390916 (Leg.Hist.) P.L. 104-297.

Both Congressional reports speak in terms of a single plan or plan amendment that the Council or Secretary would prepare to end overfishing and establish a plan for rebuilding. These reports support a conclusion that under <u>Chevron</u> step one, Congress has stated a clear intent to require that rebuilding plans be a part of the same plan or plan amendment that establishes the measures to end overfishing.

Were the Court to find it necessary to analyze these provisions under <u>Chevron</u> step two, the agency's interpretation generally would lead to the conclusion that the rebuilding measures should be a part of the same Council or Secretarial action as the measures to prevent overfishing. NMFS has established Guidelines, "based on the national standards, to assist in the development and review of FMPs, amendments, and regulations prepared by the Councils and the Secretary." 50 C.F.R. § 600.305(a)(1). The Guidelines "do not have the force and effect of law," 16 U.S.C. § 1851(b), but "summarize Secretarial interpretations that have been, and will be, applied under these principles." 50 C.F.R. § 600.305(a)(3). The guidelines are "intended as aids to decisionmaking . . . ." <u>Id.</u>

In this case, the relevant agency interpretation supports the conclusion that a rebuilding plan must be prepared by the Council at the same time as conservation and management measures geared to end overfishing. The Guidelines provide as follows:

> Within 1 year of such time as the Secretary may identify that overfishing is occurring, that a stock or stock complex is overfished, or that a threshold is being approached, or such time as a Council may be notified of the same under paragraph (e)(2) of this section, the Council must take remedial action by preparing an FMP, FMP amendment, or proposed regulations. This remedial action must be designed to accomplish all of the following purposes that apply:
>
>> (I) If overfishing is occurring, the purpose of the action is to end overfishing.
>>
>> (ii) If the stock or stock complex is overfished, the purpose of the action is to rebuild the stock or stock complex to the MSY [maximum sustained yield] level within an appropriate time frame.

50 C.F.R. § 600.310(e)(3). Thus, the agency Guidelines are most naturally read to support the conclusion that when rebuilding measures are necessary, the rebuilding measures should

accompany overfishing measures when the overfishing measures are included in an FMP or FMP Amendment.

Nonetheless, how these provisions apply to stocks that had been identified as overfished prior to the passage of the 1996 amendments, and those for which rebuilding plans had already been implemented is less clear. The one year deadline for a Council to adopt a plan after "notification or identification" of an overfished fishery would not apply in this instance, because the Council already would have taken the action that is required after such notification. For species in that situation, such as the black sea bass and snowy grouper, see 56 Fed. Reg. 56016 (Oct. 31, 1991) (Amendment 4 to the Fishery Management Plan for the Snapper-Grouper fishery of the South Atlantic Region (FMP) implementing rebuilding plan for snowy grouper); 64 Fed. Reg. 59126 (November 2, 1999) (Amendment 11 to the Snapper Grouper FMP, including a rebuilding plan for black sea bass), any changes to the existing fishery management plan would be governed by the amendment provisions applicable to FMPs.

The MSA speaks directly to plan amendments, requiring each Council:

(1) for each fishery under its authority that requires conservation and management, prepare and submit to the Secretary (A) a fishery management plan, and (B) amendments to each such plan that are necessary from time to time (and promptly whenever changes in conservation and management measures in another fishery substantially affect the fishery for which such plan was developed).

16 U.S.C. § 1852(h). See also, 16 U.S.C. § 1853 (amendments to FMPs discussed throughout requirements for FMPs).[1] Under this broad provision, amendments can address whatever particular elements of an FMP the Council or Secretary deems necessary to revise.

---

[1]The Senate Conference Report on the original Magnuson-Stevens Act provides that: "Amendments to such fishery management plans may include any matters with respect to the fishery involved which may be included in such a plan, including revised assessments and specifications as to optimum yield and the portion thereof which can be made available for foreign fishing. S. Conf. Rep. 94-711, 94th cong., 2d Sess. (1976), reprinted in 1976 U.S.C.C.A.N. 660, 664.

Existing plans, such as those for snowy grouper and black sea bass would, nonetheless, be subject to the terms of Section 304(e)(7) of the MSA, 16 U.S.C. § 1854(e)(7). Section 304(e)(7) states that:

> The Secretary shall review any fishery management plan, plan amendment, or regulations required by this subsection at routine intervals that may not exceed two years. If the Secretary finds as a result of the review that such plan, amendment, or regulations have not resulted in adequate progress toward ending overfishing and rebuilding affected fish stocks, the Secretary shall –
>
> > (A) in case of a fishery to which section 1852(a)(3) if this title applies, immediately make revisions necessary to achieve adequate progress; or
> >
> > (B) for all other fisheries, immediately notify the appropriate Council. Such notification shall recommend further conservation and management measures which the Council should consider under paragraph (3) to achieve adequate progress.

16 U.S.C. § 1854(e)(7). Subsections (A) and (B) of this provision require corrective action if an existing FMP is not sufficiently meeting the targets to end overfishing and rebuilding. In this action, the record has reflected that the Council was aware that the current overfishing measures and rebuilding plans were not meeting the necessary targets and that the existing FMPs required amendment to incorporate additional conservation measures.

This provision does not provide the same one year time line as subsection (3) to prepare overfishing and rebuilding measures. Instead, the provision states that the Secretary should recommend management measures to the Councils to consider under subsection (3) to achieve adequate progress to ending overfishing and rebuilding. The provision does not state that such plans must be produced within one year. Yet, to the extent that this plan would be prepared "pursuant to paragraph (3)," the requirements of subsection (4) which require the FMP or FMP Amendment to "specify and time period for ending overfishing and rebuilding the fishery ...." 16 U.S.C. § 1854(e)(4).

- 7 -

Looking next to the agency's interpretation, the agency's pronouncements support the conclusion that the rebuilding measures must be in the same plan or plan amendment as the measures to remedy overfishing, even under the framework of Section 304(e)(7). The National Standard Guidelines, discussed above, which require that rebuilding measures be established at the same time as measures to remedy overfishing apply whether the Secretary has made an initial notification to the Council that a stock is overfished or overfishing is occurring or the Secretary has made a finding that "[e]xisting remedial action taken for the purpose of ending previously identified overfishing or rebuilding a previously identified overfished stock or stock complex has not resulted in adequate progress." Id. (Referring back to 50 C.F.R. § 600.310(e)(2) (addressing all circumstances under which further remedial action may be necessary). Thus, even for stocks with plans existing before the one-year time line for addressing overfishing and rebuilding was enacted in the 1996 Amendments– which would be subject to Section 304(e)(7) rather than Section 304(e)(3)– the Guidelines suggest that amendments to these existing plans must include both measures to end overfishing and rebuilding measures whenever the Secretary and Council are aware that the existing rebuilding plans are not sufficient to meet the goals of Sections 304(e)(3) and 304(e)(4) of the Magnuson Act." 16 U.S.C. §§ 1854(e)(3), 1854(e)(4).

In sum, an analysis of the statute under the Chevron framework leads to the conclusion that for plans or amendments promulgated under 16 U.S.C. §§ 1853(a) and 1854(e), the rebuilding measures should be included with the measures to remedy overfishing.

Remedying overfishing still remains the touchstone of fisheries management. Since its original enactment, the MSA vested the Secretary with authority to implement interim rules to address emergencies regarding fisheries. Prior to the 1996 Amendments, the MSA provided:

- 8 -

**(c) Emergency actions**

(1) If the Secretary finds that an emergency exists involving any fishery, he may promulgate emergency regulations necessary to address the emergency, without regard to whether a fishery management plan exists for such fishery.

(2) If a Council finds that an emergency exists involving any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery–

    (A) the Secretary shall promulgate emergency regulations under paragraph (1) to address the emergency if the Council, by unanimous vote of the members who are voting members, requests the taking of such action; and

    (B) the Secretary may promulgate emergency regulations under paragraph (1) to address the emergency if the Council, by less than a unanimous vote, requests the taking of such action.

16 U.S.C. § 1855(c) (1995), subsequently amended by P.L. 104-297 (1996). With the SFA in 1996, Congress amended the interim rulemaking provision specifically to add "or overfishing" after "emergency." P.L. 104-297, "Sustainable Fisheries Act," 110 Stat. 3559 (Oct 11, 1996). After the amendment, Congress had elevated the newly defined "overfishing" as specific justification for interim rulemaking. The Act now reads, as it did when Amendment 13(c) was issued:

(1) If the Secretary finds that an emergency or overfishing exists or that interim measures are needed to reduce overfishing for any fishery, he may promulgate emergency regulations or interim measures necessary to address the emergency or overfishing, without regard to whether a fishery management plan exists for such fishery.

(2) If a Council finds that an emergency or overfishing exists or that interim measures are needed to reduce overfishing for any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery–

    (A) the Secretary shall promulgate emergency regulations or interim measures under paragraph (1) to address the emergency or overfishing if the Council, by unanimous vote of the members who are voting members, requests the taking of such actions; and

(B) the Secretary may promulgate emergency regulations or interim measures under paragraph (1) to address the emergency or overfishing if the council, by less than a unanimous vote, requests the taking of such action.

16 U.S.C. § 1855(c).

Moreover, in Section 304, Congress has also specifically provided that

During the development of a fishery management plan, a plan amendment, or proposed regulations required by this subsection, the Council may requirest the Secretary to implement interim measures to reduce overfishing under section 305(c) until such measures can be replaced by such plan, amendment, or regulations. Such measures, if otherwise in compliance with the provisions of this Act, may be implemented even though they are not sufficient by themselves to stop overfishing of a fishery.

16 U.S.C. § 1854(e)(6).

These tools provide the Secretary with important mechanisms to end overfishing if an emergency or overfishing exists that is not being addressed sufficiently by a plan. That these interim measure can be implemented without regard to whether a rebuilding plan has been implemented demonstrate Congress' intent that ending overfishing is the first important step in the fisheries mangement process.

## III.  CONCLUSION

As explained more fully above, an analysis of the statute under the Chevron framework leads to the conclusion that for plans or amendments promulgated under 16 U.S.C. §§ 1853(a) and 1854(e), the rebuilding measures should be included with the measures to remedy overfishing.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General

JEAN E. WILLIAMS
Chief, Wildlife & Marine Resources Section

s/ *Lisa Lynne Russell*
LISA LYNNE RUSSELL, Assistant Chief
ROBERT P. WILLIAMS, Trial Attorney
U.S. Department of Justice
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369
(202) 305-0210 (ph)
(202) 305-0275 (fx)
lisa.russell@usdoj.gov
robert.p.williams@usdoj.gov

***Attorneys for Federal Defendant***

Of Counsel:

Monica A. Smit-Brunello
Department of Commerce, NOAA
Office of General Counsel
Southeast Regional Office
263 13th Avenue South, Suite #177
St. Petersburg, Florida   33701
(727) 824-5361
(727) 824-5376 (fax)